Good morning. My name is Leonard Condon. I'm appearing for the appellants and the plaintiffs in the matter. Our clients were summarily tossed out of court, and we believe that the district court committed a number of errors in both having not remanding the case to state court and ultimately dismissing the case on motion. First of all, we believe that the, and we've argued and covered it in our briefs, that the motion to, I mean, that the removal was not timely. It was not because the rule is that it should be 30 days from the time that the first defendant. We don't have that rule. We don't have either. The rule in the Ninth Circuit, right? So either rule we don't have. I mean, the Ninth Circuit hasn't adopted the first in time, has it? Well, you're arguing that we should adopt the I'm arguing that you should adopt it. And I'm arguing that there is sort of a split among the cases and the cases that have actually ruled that a later in time removal was justified as have done so based on the fraud, yes. This circuit went with first in time and the other circuits have gone with last in time, right? No, I believe the majority of the circuits are still first in time. What about after Murphy? Have there been any first in time circuits? I don't believe so, Your Honor. The cases the case that was cited by the defendants in this case dealt with an issue where there was a fraudulent delay of service of a number of the defendants and there was a time gap and it was basically decided on fraud grounds. Doesn't last in time make more sense? I don't believe so. I mean, there are some justification for it because of allowing defendants that are served later to have the opportunity to remove. I think that's a justification. It seems like first in time would just allow people to play games with the Court from the standpoint that you just pick, you know, you pick the dodo defendant first to serve that person first that doesn't, hasn't even heard of removal or maybe is someone that lives out in a shack and doesn't hire a lawyer and all of that and then the 30 days are gone and then you serve the more sophisticated people and voila, you've got what you want. I understand that argument, Your Honor, and that was not the case in our case. We served everybody at the same time. If we're going to adopt a rule, you know, we have to look to the policy behind the various rules and, you know, courts, you know, we like to think of ourselves as fair and we like to think of the rules that we adopt not allowing opportunities for people to play games but for everyone to have a fair opportunity, and it just seems like last in time would encourage people to get everyone served and not play that game but still give everyone an opportunity to remove if they legitimately have that. But again, in that case, there's also the potential for some defendant coming in late in time, not even necessarily being brought in by the plaintiff, but as in this case when the FDC, FDIC came in when IndyMac went upside down and then anybody coming into the case, and it could be in the middle of trial theoretically, they could, or right before trial, and the case could be removed from the state court's hands after all the work's been done. I think, you know, there's certainly the potential for that happening as well. Would the FDIC ever be in state court? I don't know if they, I think that you would never directly sue them in state court. You're not your typical defendant, that's true, and that kind of threw a monkey wrench in the middle of this case. But at any rate, even if the court finds that it was initially timely, the court recognized that there wasn't a complete joinder of all the defendants in the motion, so it set a time limit to, it gave the defendants an opportunity to get together and join everybody, and they still didn't do it. And he indicated in his initial ruling on the first motion to dismiss that he would make a different order if they, if all the defendants weren't joined. He gave them basic instructions to do that and then decided the motion anyway, and didn't change his ruling. So I think the judge recognized that it had to be a unanimous joinder, and he didn't, at least of the served defendants, and he didn't, obviously the result was that he did not remove the case. Do you want to speak about the dismissal? Yes, of course. Then we get to the second issue about dismissal. And if the court recalls, there was the original complaint that was filed was filed in state court. It was removed. And that was the complaint that the first motion to dismiss was made on. And there are some different pleading requirements regarding fraud in the Federal Court than some state courts, at least. And at that point, the court gave leave to amend, but if the court recalls, there was a very short window between the time of filing the first amended complaint, the requirement, and his ruling on the motion about the joinder. It was like a few days. So I believe the plaintiff's got to be briefed. The court gave us a little bit more time to file the first amended complaint, which we did, and then there was another motion to dismiss. And it seems to me the district court gave you pretty clear instructions as to what you needed to do in the amended complaint to cure the defects in the original complaint. And you didn't do it. Well, that's the story. We contend we did do it. The instructions he made, gave us, were that we should amend certain paragraphs to be more specific about the allegations. And when we filed the second amended complaint, we added those allegations into a number of other, in the general allegations to, I mean, there were like 20 additional allegations, which I believe met the requirement of specificity that is required. I mean, you can't One of the concerns the district judge had is that all fraud was alleged against all defendants. It was obtruded en masse. And then I think that wasn't solved. That wasn't, that was not cured in the second complaint, right? Well, in the second amended complaint, the specificity as to what each defendant did in the conspiracy or in the scheme that we were alleging, and, I mean, I quoted them in the brief. There's at least 20 different allegations against different individuals specifying what each one did. And, again, this is a situation where we're just investigating this, and we ought to be able to conduct some discovery to find out who did what and what the relationship with these parties were. The end result was our clients were defrauded just the same, and we should have been given that opportunity. And, again, it appears that the Court dismissed the case as a sanction for not following his instructions under the statute.  under the statute. Well, I guess I'm hearing you say two things. I'm hearing you say that the reason that it wasn't sufficient is because you needed to do more discovery, and that, in fact, in fact would be a concession, that it wasn't sufficient. And I'm hearing you say the other side, the Court dismissed it as a sanction because you wouldn't do what the Court said. Well, Your Honor, we believe that the allegations were sufficient to get under the law to get to the – allow us to conduct discovery and get past the motion to dismiss. But the Court found that they weren't in ruling on the motion and pointed out some things that we felt needed to be more specifically pleaded. And we attempted to do that in good faith. We put in at least 25 – I mean, I don't know the exact number, but we cited them in the briefs, all the additional allegations that we put in specifying the person who did what, et cetera. And we believe that if there was a question before, that certainly cured the problem. It doesn't appear the Court looked at what we actually added. He only looked back at those paragraphs, which we didn't – which were general paragraphs that we didn't amend. And, again, the sanction for total dismissal of a case, the Court is essentially finding that there's not – But you're not saying the Court didn't read the new paragraphs. I don't – I – he didn't mention them in his ruling, so I must – I'm not – I I'm not here to address the fact that we had amended the complaint and added a lot of additional allegations. Well, give me a – for example, of an allegation that you added in the second All right. I'll just see. American complaint that – that met the specificity requirements that All right. As to Kennedy, paragraph 2. Kennedy masterminded the fraudulent scheme, marked it – I'm sorry. I'm sorry. You're going to have to – Yeah. You must specifically – I'm on the second American complaint. You've got to give me a page number. And a – a paragraph and line and stuff like that. Let me see if I can find the exact – I'm sorry, I didn't bring that with us. Do you have the complaint there? I don't have a complaint. I have the – the brief where we mentioned the paragraph and line. You came to court without the complaint, the very thing that you are appealing about? I do have it in – it's in my brief. Well, it's not a far and long distance. Well, you're out of time. Why don't you – maybe we'll give you a minute for rebuttal and you can find it. I'll attempt to point those out. But you claim that you amended these things in a way that met the district court's – the district court's objections, but you don't come here with any examples. I will do that on rebuttal. Sorry. Okay. May it please the Court, John Williams. I represent one of the defendants and the respondent, courtesy Oldsmobile Cadillac. I will be brief, Your Honor. Two things – two things going on here. One, we're asking that the denial of the plaintiff's motion to remand be affirmed and that the dismissal of the second-minute complaint also be affirmed. One thing that hasn't been touched on, there were two separate independent bases for removal. And as the Court is aware, the plaintiffs did not touch on the first separate and independent basis for removal, which is the FDIC's right under 12 U.S.C. 1819. That was undisputed at the district court level. It was – the timing was proper. The substance of the intervention was proper by the FDIC. So we had a proper removal by the FDIC. So the only question with regard to that is, did the district court abuse its discretion in the post – the post-removal request by the plaintiffs in the form of their dismissal of the FDIC? Did that oust the jurisdiction of the district court? And did the court abuse its discretion? I know Your Honor has seen our briefs on this in the case law that we've cited, that – I know there's a split in authority here. We've got the Fifth Circuit and the Second Circuit, specifically, most recently, the Adair case, which a reading of that case says that the district court would have abused its discretion if it had remanded the case after the dismissal of the FDIC. I was kind of surprised you didn't cite Proctor v. Vishay intertechnology. It's not – it's a Ninth Circuit case. And basically, what – that addresses his allegation that the ones where you supposedly didn't have the defendants, you know, you didn't – that it would – it's a helpful case to use. So I was sort of surprised. It did happen after the initial briefing, but it still was quite a long time ago. And it's consistent with this – with this position, that the district court has this case pursuant to – I mean, do you know that? Do you know – are you familiar with Proctor? I am familiar with it, Your Honor. But I don't – That's what they have 28 Js for. True enough. True enough. And that's what I have lock clerks for. But – But in any event, it's our view that the court would have abused its discretion if it had remanded the case at that point. But even if the court is so inclined to go with – I believe it's the Third Circuit, which is the – on the other side of that position of the Fifth and the Second and even the Ninth on this, it's irrelevant for our purposes, because then the question is, did the court abuse its discretion to exercise supplemental jurisdiction over the pen and state claims? Well, what about the 25 paragraphs that he alleged – he says he added? Why didn't – why isn't there anything there? Where's – In terms of the – in terms of going to the dismissal aspect of the – Well, yeah. I mean, he's saying – I'm assuming that Judge O'Neill read the additional paragraphs. I don't think that there's any indication that he didn't. Why – if he added 25, why isn't there anything in there? There's absolutely nothing in there. I think – and Judge O'Neill goes to great lengths in his dismissal of the Second Amendment complaint to say, look, this is what I wanted. I want you to plead properly a fraud count as to the specific and diverse defendants. I think the diversity of the defendants is important here, too. For example, courtesy to Oldsmobile Cadillac, I have no idea what any claimed fraudulent misrepresentation or any fraud that – which is the underpinning of the entire complaint is the fraud. And there's nothing in the allegations in the Second Amendment complaint, without regard to the fact that they didn't address the specific paragraphs that the Court said you must amend these paragraphs to say something actionable in fraud, without regard to the fact that they didn't even change those paragraphs at all. What they did add, only related to, as they said in their briefs, some general role that the defendants had, but it has nothing to do with the fraud counts that Judge O'Neill directed the plaintiffs to allege. So the Second Amendment complaint is no better than the first. It adds nothing. And I think at that point, Judge O'Neill had admonished the plaintiffs when he ruled on the first motion, the motion to amend the initial amended complaint – or the motion to dismiss it, rather. Judge O'Neill was very specific, saying, I'm warning you, you must amend this complaint the right way. I will reluctantly give you one more chance. And, you know, a reading – a fair reading of the Second Amendment complaint shows that plaintiffs ignored that admonition, and they ignored it at their own risk. Okay. Thank you. You know, there isn't – there isn't much else that I need to get to, other than that we have remand, we have it. And we don't have to get into the RICO remand, which is equally – equally valid. I know the Court is well aware of the timing split in authority. We think the last served rule is more valid for the reasons I think that have already been discussed here. As far as the joinder, the bottom line on the joinder in a nutshell is that the Court asked the plaintiff to get proofs of service filed for all properly served defendants. The plaintiffs then supplied the list of what were purportedly the properly served defendants. We then were instructed by Judge O'Neill to deal with those, to account for them. We did. I think there were eight. Half of them were not properly served defendants, and we demonstrated to Judge O'Neill why that's the case. And the other half, we secured joinders. So Judge O'Neill properly dismissed – or properly denied the motion to remand based on the RICO count. But unless the – unless the Your Honors have any other questions, I'll stop now. Thank you. We are out of time. We'll give you a minute for rebuttal.  All right. As I started to say, I have them cited here. In paragraph 2 of the Second Amended Complaint, and this is on the appellate record, tab 112, page 107, Appellant Kennedy masterminded the fraudulent scheme. I'm sorry. I have the Second Amended Complaint, and page 2 continues to be the caption. No, paragraph. Oh, paragraph. I'm sorry. I'm sorry. Paragraph. Go ahead. Go ahead. And then the next one is – I'm sorry. What does it say? What's here? It says, Appellate Kennedy – well, Kennedy masterminded the fraudulent scheme, marketed the scheme, acted on behalf of – here of Malthus and the lost sheep, and personally met with the plaintiffs to prevent sales pitches for fraudulent programs, the specific of which are further discussed in the complaint. Ear of Malthus and lost sheep. The next thing is the paragraphs 4 and 5, specific allegations of the ear of Malthus and the lost sheep. Davies was mentioned in paragraph 6. A whole series of – these were all added to specifically talk about what each of the alleged defendants contribute to the scheme. And then later on it says that they conspired together. But we didn't have an opportunity to do discovery and determine exactly what interactions these people had. All we knew at the time was our clients were part of a scheme and they lost money. Okay. Thank you. Thank you. Case study will stand for a minute. We're adjourned. All rise.
judges: Archer, Kozinski, Callahan